IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Action No. 1:18-cv-02809-LTB

STEPHANIE RED EARTH,

   Plaintiff,
v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

   Defendant.

_____

ORDER
_____

  Plaintiff Stephanie Red Earth appeals from the Social Security Administration ("SSA") Commissioner's final decision denying her application for supplemental security income, filed pursuant to Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–1383c. Jurisdiction is proper under 42 U.S.C. § 405(g). Oral argument would not materially assist me in the determination of this appeal.

  After consideration of the parties' briefs, as well as the administrative record, I AFFIRM the Commissioner's final order.

### I.  STATEMENT OF THE CASE

  Plaintiff is a 41 year-old woman who worked as a cashier in fast food restaurants. [Administrative Record ("AR") 191, 195] She seeks judicial review of SSA's decision denying her application for supplemental security income. Compl., ECF No. 1. Plaintiff filed her application for supplemental security income in April 2015. [AR 139, 149] She claimed her alleged onset date of her disability was July 1,

1

2013, but later amended this to April 6, 2015. [AR 10, 191, 860]

The application was initially denied in January 2016. [AR 84] After Plaintiff's request for review, the Administrative Law Judge ("ALJ") conducted an evidentiary hearing and issued a written ruling in December 2017. [AR 7–27, 36–68, 136–37] In that ruling, the ALJ denied Plaintiff's application on the basis that she was not disabled because, considering her age, education, work experience, and residual functional capacity, Plaintiff could perform jobs that existed in significant numbers in the national economy. [AR 21]

The SSA Appeals Council subsequently denied Plaintiff's administrative request for review of the ALJ's determination, making SSA's denial final for the purpose of judicial review. [AR 1–5]; 20 C.F.R. § 416.1481. Plaintiff timely filed her Complaint with this Court seeking review of SSA's final decision. ECF No. 1.

## II. RELEVANT MEDICAL HISTORY

Plaintiff has a history of mental conditions, including anxiety, bipolar disorder, personality disorder, and a mood disorder. [AR 75, 354, 619] Plaintiff has spent considerable time incarcerated and has struggled with drug abuse, notably with methamphetamines. [AR 47–50, 350–57] The majority of Plaintiff's medical records are from the Denver Sheriff Health Services and the Mental Health Center of Denver.

At times, Plaintiff's mental health status exams from the Denver Sheriff Health Services read that she suffered from poorer judgment and insight, auditory hallucinations, paranoid thoughts, and a dysphoric mood. [AR 492–93, 512] The

auditory hallucinations were noted when she was off her medication. [AR 493] But generally, Plaintiff had unremarkable mental status exams noting alert attention; orientation to person, place, and time; cooperative and calm behavior; euthymic mood; appropriate affect; and thought content within normal limits. [AR 492, 496, 512, 527, 538, 554]

In 2014, Plaintiff was referred to the Mental Health Center of Denver. [AR 462] Psychiatrist Erinn Stauter, MD noted Plaintiff was depressed and tearful in an appointment, had auditory hallucinations when on methamphetamines, but otherwise recorded an unremarkable psychiatric exam. [AR 427–32] Around April 2014, Plaintiff was again incarcerated. [AR 407–08] A year later, she saw Dr. Stauter who noted an unremarkable psychiatric exam, except for auditory and visual hallucinations. [AR 353–54] Plaintiff continued to struggle with her use of drugs and related symptoms, alongside a depressed mood, but still had generally unremarkable mental exams. [AR 286–90, 320–21, 636, 647, 658, 668, 677, 684, 696, 709, 718, 726, 734, 742, 750, 758, 769, 780, 791, 804, 818, 833, 846]

Throughout Plaintiff's care, her case manager noted that she was polite, well-oriented, and positive in her meetings. [AR 312, 334, 337, 340, 345, 348, 365, 368, 374, 380, 390, 414, 418, 458, 461; *but see* 270 (Plaintiff "presented as somewhat depressed, but still optimistic."), 326 (Plaintiff was "sad and frustrated on the phone.")]

### III. LEGAL STANDARDS

#### A. SSA's Five-Step Process for Determining Disability

A claimant is "disabled" under the Social Security Act if she is unable to

3

"engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). SSA has established a five-step sequential evaluation for determining whether a claimant is disabled and thus entitled to benefits. 20 C.F.R. § 416.920.

At step one, SSA asks whether the claimant is presently engaged in "substantial gainful activity." *Id.* If she is, benefits are denied and the inquiry stops. 20 C.F.R. § 416.920(b). At step two, SSA asks whether the claimant has a "severe impairment"—that is, an impairment or combination of impairments that "significantly limits [her] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). If she does not, benefits are denied and the inquiry stops. If she does, SSA moves on to step three, where it determines whether the claimant's impairments "meet or equal" one of the "listed impairments"—impairments so severe that SSA has determined that a claimant who has them is conclusively disabled without regard to the claimant's age, education, or work experience. 20 C.F.R. § 416.920(d). If not, SSA goes to step four.

At step four, SSA determines the claimant's residual functional capacity ("RFC")—that is, what she is still able to do despite his impairments—and asks whether the claimant can do any of her "past relevant work" given that RFC. 20 C.F.R. § 416.920(e). If not, SSA goes to the fifth and final step, where it has the burden of showing that the claimant's RFC allows her to do other work in the

4

national economy in view of her age, education, and work experience. 20 C.F.R. § 416.920(g).

In contrast with step five, the claimant has "the burden of establishing a prima facie case of disability at steps one through four." *Doyal v. Barnhart,* 331 F.3d 758, 760 (10th Cir. 2003).

### B. Standard of Review

My review concerns only whether SSA's factual findings are supported by substantial evidence and whether the correct legal standards were applied. *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015). With regard to the law, reversal may be appropriate when SSA fails to apply proper legal standards. *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014) (quoting *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994)). With regard to the evidence, I must "determine whether the findings of fact . . . are based upon substantial evidence, and inferences reasonably drawn therefrom. If they are so supported, they are conclusive upon the reviewing court and may not be disturbed." *Trujillo v. Richardson*, 429 F.2d 1149, 1150 (10th Cir. 1970).

"Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). The record must demonstrate that the ALJ considered all the evidence, but an ALJ is not required to discuss every piece of evidence. *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996). I examine the record as a whole and may not reweigh the evidence or

substitute my judgment for that of the ALJ. *Flaherty v. Astrue*, 515 F.3d at 1070.

## IV. THE ALJ'S RULING

In her ruling, the ALJ followed the five-step analysis outlined *supra*. The ALJ concluded under the first step that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of April 6, 2015. [AR 12] Under step two, the ALJ determined that Plaintiff had the severe impairments of bipolar disorder; unspecified personality disorder; amphetamine use disorder; and bilateral carpal tunnel syndrome. [*Id.*]

The ALJ concluded under step three that the enumerated severe impairments did not meet or medically equal an impairment in 20 C.F.R., Pt. 404, Subpt. P, App. 1 (the "Listing"). [AR 13] The ALJ found that Plaintiff had the RFC to perform a full range of work at all exertional levels besides certain restrictions:

> [Plaintiff is] able to perform work that does not require more than frequent kneeling, crawling, or bilateral handling; performing work limited to simple, routine tasks; being off-task 10 percent of the day in addition to regularly scheduled breaks; only occasional changes in the work setting; only occasional interaction with co-workers and supervisors; and never interacting with the general public.

[AR 15]

The ALJ found that Plaintiff was unable to perform any past relevant work. [AR 21] In the fifth and final step, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform. [AR 21] The ALJ supported her decision based in part on the testimony of the vocational expert and related hypotheticals, and found that Plaintiff could be a housekeeper, routing

6

clerk, or laundry worker. [AR 21–22] Thus, the ALJ concluded that Plaintiff was not disabled. [AR 23]

## V. ISSUE ON APPEAL

Plaintiff argues that the ALJ erred by improperly: (1) assessing Plaintiff's credibility; (2) evaluating medical evidence; and (3) determining Plaintiff's RFC.

### A. Evaluation of Plaintiff's Credibility

Plaintiff argues that the ALJ did not properly evaluate Plaintiff's credibility. Pl.'s Br., ECF No. 14 at 5. Plaintiff argues that the ALJ misconstrued and misstated her testimony. *Id.* at 5–6. However, Plaintiff does not fully analyze the impacts of the ALJ's alleged mistakes besides conclusively stating in her Reply that because "the ALJ did not link the evidence to her credibility determination, it cannot stand." ECF No. 16 at 2.

Credibility determinations are particularly suited to the finder of fact and must be supported by substantial evidence. *Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010). The ALJ must consider certain factors in determining credibility, including the individual's daily activities. 20 C.F.R. § 416.929(c)(3). The ALJ need not recite a formalistic factor-by-factor recitation of the evidence, but must merely set forth the specific evidence she relies upon in evaluating the claimant's credibility. *Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009) (quoting *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000)).

Plaintiff argues that the ALJ misconstrued Plaintiff's testimony regarding her woodworking, her work around her mother's home, and her ability to interact with people. ECF No. 14 at 5–6. But Plaintiff does not fully develop this argument

7

in a meaningful way. Regarding woodworking and refinishing projects, Plaintiff writes "[t]he ALJ states that Plaintiff does woodworking and refinishing projects in her shed. Plaintiff testified that she does these 'little mini wooden projects' as 'something to keep her mind going.'" ECF No. 14 at 5 (citing [AR 54]) Plaintiff does not follow this with an analysis of how the ALJ erred or how that error affected the ALJ's decision. *Id*. The same flaw exists regarding Plaintiff's brief discussion of her daily activities and interactions with others. *Id*.

I find that the ALJ accurately recounted Plaintiff's testimony in context. [*Compare* AR 14, 19–20 *with* AR 50, 53–54, 58, 203–10] Plaintiff stated that she worked on wood projects "to keep [her] mind going." [AR 54; 621 (noting that Plaintiff enjoys woodworking projects)] She did house work, including cooking and laundry, but shopped with others because of her anxiety. [AR 621] She testified that taking out the trash or watering the lawn at her mother and grandmother's house helped give her purpose. [AR 50] In the context of interacting with others, Plaintiff indeed testified that she had issues with authority figures. [AR 60–61] But she wrote in her function report that she got along with authority figures a "little above average." [AR 209] As explained *supra,* she had positive interactions with her case manager. The record also shows that she "partie[d] with friends once a week." [AR 766]

The ALJ sufficiently supported her analysis of Plaintiff's credibility, and as such, the ALJ did not err in her evaluation. *Paulsen v. Colvin*, 665 F. App'x 660, 663 (10th Cir. 2016) ("The ALJ's credibility findings [were] closely and affirmatively

8

linked to substantial evidence and may not be disturbed" when the ALJ discussed, in part, the plaintiff's daily activities in evaluating her credibility) (unpublished).

### B. Evaluation of Medical Evidence

Plaintiff argues that the ALJ gave improper weight to certain medical opinions. ECF No. 14 at 6. She contends that the ALJ should not have given greater weight to the state agency examiner over the opinions of the consultative examiner and Plaintiff's treating psychiatrist. *Id.*

An ALJ must consider every medical opinion and discuss the weight she assigns to the opinion. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012). An ALJ must consider certain factors when she analyzes medical evidence. *Watkins v. Barnhart*, 350 F.3d 1297, 1300–01 (10th Cir. 2003); 20 C.F.R. § 416.927(c); *see* 20 C.F.R. § 416.913a(b)(1) (evidence from state agency consultants are viewed as other opinion evidence). While the ALJ need not explicitly discuss each individual factor, *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007), the ALJ must "give good reasons in the notice of determination or decision for the weight [she] ultimately assigns the opinion." *Watkins v. Barnhart*, 350 F.3d at 1301.

"A treating-source opinion concerning the nature and severity of a claimant's impairment is entitled to controlling weight provided it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record.'" *Paulsen v. Colvin*, 665 F. App'x 664 (quoting 20 C.F.R. § 404.1527(c)(2)) (alterations omitted). If the

ALJ declines to give a treating-source opinion controlling weight, she must then determine what weight to give the opinion using the factors in 20 C.F.R. § 416.927(c). *Paulsen v. Colvin*, 665 F. App'x at 664. In the case that a treating physician's report is inconsistent with other medical evidence, the ALJ must determine that the medical evidence outweighs the treating physician's report, "not the other way around." *Goatcher v. U.S. Dep't of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995) (quoting *Reyes v. Bowen*, 845 F.2d 242, 245 (10th Cir. 1988)).

Plaintiff argues that the ALJ gave insufficient weight to the opinions of Dr. Stauter and consultative examiner Amy Crockett, Ph.D. ECF No. 14 at 6–7. Plaintiff adds that the ALJ afforded too much weight to the opinion of the state agency examiner Mary Ann Wharry, Psy.D. *Id.*

### 1. Dr. Stauter

In her decision, the ALJ noted that Dr. Stauter provided a medical source statement. [AR 19] The ALJ accurately recounted that Dr. Stauter indicated that Plaintiff had marked and extreme limitations in her social functioning; her abilities in concentration, persistence, and pace; and her ability to adapt and manage herself. [AR 19, 852–59] The ALJ afforded little weight to this opinion as Plaintiff "had numerous examinations in which she had normal mental status examination findings other than minimal issues with her mood, she reported working side jobs cleaning, woodworking, and refinishing furniture, and she indicated that she partied and spent time with friends and family." [AR 20] The ALJ added that

10

Plaintiff had normal mental status exams and few personal problems when she was compliant with her medication, even when she used methamphetamines. [*Id.*]

### 2. Dr. Crockett

The ALJ accurately recounted Dr. Crockett's opinion, who found that: Plaintiff "would have difficulty in a full-time job because of her self-consciousness and low self-confidence, and that she would struggle with sustained concentration, independent decision-making, social and professional interactions, and stress and frustration"; Plaintiff's "abilities to understand, remember, and carryout simple and complex instructions and tasks [were] average and only mildly impaired"; and Plaintiff's "attention and concentration and ability to maintain a regular schedule and ordinary routine were average." [AR 19, 622–23] "Dr. Crockett indicated the claimant had marked limitation with social interaction, moderate limitation with her ability to accept instruction or criticism and to respond appropriately to others, and moderate limitation in her ability to tolerate work-related stressors[]." [*Id.*]

The ALJ gave the opinion partial weight as it was "generally consistent with the record as a whole, which shows that the claimant does have some issues with her mood, paranoia, and anxiety that negatively affects her abilities to concentrate and get along with others at times." [AR 19] But the ALJ discounted the opinion based on the same reasoning she discounted Dr. Stauter's opinion, including Plaintiff's normal mental status exams, her daily activities, and her interactions with others. [*Id.*] The ALJ found Dr. Crockett's opinion consistent with the record in showing that Plaintiff was capable of simple work, but was inconsistent in that the

11

record did not support that Plaintiff had marked limitation in her social functioning. [AR 19]

### 3. Dr. Wharry

The ALJ noted that Dr. Wharry found Plaintiff "was capable of work of limited complexity, but which requires accuracy and attention to detail, cannot work closely with supervisors or co-workers, can accept supervision and relate to co-workers if contact is not frequent or prolonged, and needs to avoid the public." [AR 20] The ALJ afforded this opinion great weight because it was consistent with the record, looking to the same information as she did with Drs. Stauter and Crockett. [*Id.*]

I find that the ALJ did not err in her weighing of medical opinions. She accurately recounted the opinions and gave sufficiently good reasons for the weights she assigned. *Watkins v. Barnhart*, 350 F.3d at 1301. She cited to the medical records and testimony showing that Plaintiff had consistently normal mental status exams and "reported working side jobs cleaning, woodworking, and refinishing furniture, and she indicated that she partied and spent time with friends and family." [AR 20] As recounted *supra*, this was an accurate analysis of the record.

Thus, substantial evidence supported the ALJ's weighing of medical opinions. *Cf. Adcock v. Comm'r, SSA*, 748 F. App'x 842, 844–46 (10th Cir. 2018) (the ALJ properly discounted the treating physician's opinion when he cited to daily activities and the opinions of state agency examiners) (unpublished).

### C. Determination of Plaintiff's RFC

Finally, Plaintiff argues that the ALJ erred in her RFC determination. ECF No. 14 at 7–8. Plaintiff contends that her diagnosis of bipolar disorder should meet Listing 12.04. *Id.* Also, Plaintiff argues that the ALJ's determination that Plaintiff could occasionally interact with co-workers and supervisors goes against the opinions of Drs. Stauter and Crockett. *Id.* at 8.

A claimant's RFC is evaluated using all the relevant evidence in his or her case record, "including information about the individual's symptoms and any 'medical source statements' . . . submitted by an individual's treating source or other acceptable medical sources." 20 C.F.R. § 404.1545(a)(1). The RFC is "an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." *Id.*

In her decision, the ALJ found that Plaintiff's severe impairments did not medically equal an impairment in the Listing, specifically Listings 12.04 and 12.08. [AR 14] Listing 12.04 pertains to depressive, bipolar, and related disorders and Listing 12.08 pertains to personality and impulse-control disorders. 20 C.F.R., Pt. 404, Subpt. P, App. 1, Pt. A2. The functional criteria assessed represents certain areas of mental functioning affecting the claimant's ability to: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. *Id.* The ALJ analyzed whether each Listings' "B criteria" was met, where the "mental disorder must result in 'extreme'

13

limitation of one, or 'marked' limitation of two, of the four areas of mental functioning." *Id.*; [AR 14]

The ALJ found no limitations in the criteria of understanding, remembering, or applying information. [AR 14] The ALJ wrote that Plaintiff "stated she does woodwork in her shed, generally addresses her personal care needs with minor difficulties, prepares meals, does house and yard work, shops in stores, can count change, attends group meetings, finishes what she starts, is able to fol1ow written instructions, and gets along with authority figures." [AR 14] She added that Plaintiff "testified that she cleans her home, takes out trash, mows the lawn, cleans carpets and furniture for money, does woodwork and refinishing projects, and shops for groceries." [*Id.*]

Next, the ALJ found that Plaintiff had a moderate limitation in interacting with others. [*Id.*] The ALJ reasoned that Plaintiff testified that she had significant difficulty in crowds and relating to others, but that she met "with her parole officer, therapist, and case manager once a week, has a significant other, shops in stores, attends group meetings, and gets along with authority figures[]." [*Id.*] Additionally, Plaintiff testified that she cleans carpets and furniture for money, does woodwork and refinishing projects, shops for groceries, and that she had several friends with whom she attended parties. [*Id.*]

Finally, the ALJ found that Plaintiff had a moderate limitation in concentrating, persisting, or maintaining pace. [*Id.*] The ALJ supported her conclusion by looking to similar information in the other criteria, looking at daily

14

activities and Plaintiff's interaction with others. [*Id.*]

Plaintiff summarily states that "the ALJ's determination that Plaintiff is capable of occasional interaction with co-workers and supervisors is contrary to the opinions of Dr. Stauter and Dr. Crockett." ECF No. 14 at 8. She adds in her Reply that the Dr. Stauter's medical source statement supports Plaintiff's claim that her disability meets or equals the guidelines of Listing 12.04. ECF No. 16 at 2–3. Explained *supra*, the ALJ's determination of Plaintiff's interactions with others was reasonable, as was the weight she assigned to Drs. Stauter's and Crockett's opinions. Since the ALJ reasonably discounted the weight given to Dr. Stauter's opinion, it would be improper to rely upon that medical source statement to find that Plaintiff's disability equaled the guidelines of Listing 12.04. *Cf. Adcock v. Comm'r, SSA*, 748 F. App'x at 844–46. As such, the ALJ did not err in her evaluation of Plaintiff's RFC.

## VI. CONCLUSION

ACCORDINGLY, for the preceding reasons, I AFFIRM the Commissioner's final order.

Dated: May 20, 2019, in Denver, Colorado.

BY THE COURT:

s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE